UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER BRODBECK,<br><br>  Plaintiff,<br><br>  v.<br><br>MASSACHUSETTS DEPARTMENT<br>OF CORRECTION,<br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 18-cv-10855-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                   **July 23, 2021**

**I.   Introduction**

Plaintiff Jennifer Brodbeck ("Brodbeck") has filed this lawsuit against Defendant Massachusetts Department of Correction ("DOC") alleging gender discrimination in violation of Title VII. D. 1. DOC has moved for summary judgment. D. 73. The parties have also filed motions to strike. D. 78; D. 79. For the reasons stated below, the Court ALLOWS the motion for summary judgment, D. 73, and DENIES the motions to strike, D. 78; D. 79.

**II.   Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp.,

1

217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III.    Factual Background

The following facts are undisputed unless indicated otherwise.  In 2004, DOC hired Brodbeck, a female veteran, as a Corrections Officer ("CO").  D. 75 ¶ 1; D. 76 ¶ 1.  Brodbeck suffers from post-traumatic stress disorder.  Id.  The DOC granted Brodbeck accommodations for her PTSD, D. 75 ¶ 2, which Brodbeck alleges the DOC later violated.  D. 76 ¶ 2.

In June 2010, Brodbeck reported to DOC that a male CO was stalking her.  D. 75 ¶ 3; D. 77 ¶ 2.  The DOC initiated an investigation into Brodbeck's allegations, which included interviewing Brodbeck, the accused CO and others.  D. 75 ¶ 4.  On December 5, 2011, Brodbeck had an incident on duty in which she told someone she was suffering from anxiety and may become violent.  Id. ¶ 10.  Following the incident, Brodbeck was detached from duty with pay pending a fitness for duty evaluation.  Id. ¶ 11.  On January 2, 2012, an independent medical examiner found Brodbeck fit for duty and permitted her to return to work.  Id. ¶ 13.  In February 2012, DOC accused Brodbeck of having made false allegations against the CO.  Id. ¶ 5; D. 76 ¶ 3.  On March 8, 2012, DOC issued Brodbeck a one-day suspension on these grounds.  D. 75 ¶ 7; D. 76 ¶ 5. DOC's investigator also concluded that the male CO had failed to report court appearances, in

violation of DOC regulations. D. 75 ¶ 8; D. 76 ¶ 6. DOC issued the male CO a one-day suspension, as well. Id. Brodbeck alleges DOC suspended her with pay pending investigation while the other CO's suspension did not affect his pay. D. 75 ¶ 22; D. 76 ¶ 14. Ultimately, the DOC withdrew Brodbeck's one-day suspension. D. 75 ¶ 23. The male CO served his suspension. D. 75 ¶ 8; D. 76 ¶ 6.

On April 5, 2012, Brodbeck filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). D. 75 ¶ 17; D. 76 ¶ 10. In August 2012, approximately eight months after Brodbeck's positive fit for duty evaluation, Brodbeck returned to work. D. 75 ¶ 16. Two years later, in August 2014, DOC filed a petition to involuntarily retire Brodbeck from service. Id. ¶ 20.

## IV.   Procedural History

On April 5, 2012, Brodbeck filed a complaint with the MCAD, alleging disability and gender discrimination under both state and federal law. D. 75 ¶¶ 17, 28. The complaint was simultaneously referred to the Equal Employment Opportunity Commission ("EEOC"). Id. ¶ 28.

Brodbeck instituted this action on May 1, 2018. D. 1. On June 5, 2018, Brodbeck voluntarily dismissed five of the six claims in her verified complaint, leaving her Title VII claim alleging gender discrimination before this Court. D. 10. On June 15, 2018, Brodbeck filed four of these dismissed claims, alleging disability discrimination and retaliation under state and federal law, in a separate action against DOC and DOC's Commissioner in Suffolk Superior Court. D. 75 at 125-141. On March 21, 2019, the Superior Court dismissed Brodbeck's state law discrimination claims on statute of limitations grounds and dismissed Brodbeck's Americans with Disabilities Act claims ("ADA") claims for monetary relief on sovereign immunity grounds. D. 75 ¶ 34. DOC has now moved for summary judgment on Brodbeck's remaining claim here for

gender discrimination in violation of Title VII. D. 73. This Court heard the parties on the pending motion and took the matter under advisement. D. 82.

## V.     Discussion

### A.     Motions to Strike

Brodbeck moves to strike several statements in DOC's statement of material facts, D. 75 ¶¶ 5, 6, 7, 8, 9, 14, 15, on the grounds that the statements are "not 'a concise statement of material facts." D. 78 at 1. Brodbeck also moves to strike the affidavits of Kelly Correira ("Correira") and Christine Dodd ("Dodd") on the grounds that they are not based on personal knowledge and are inadmissible hearsay. D. 78 at 1; see D. 75-1; D. 75 at 68-69 (Exh. 3).

Local Rule 56.1 obligates movants to provide a "concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried" together with citations to record evidence. Oppositions to motions for summary judgment similarly are obligated to submit a "concise statement of the material facts or record as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1. District courts enjoy "broad latitude in administering local rules" and are "entitled to demand adherence to specific mandates contained in the rules." Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994). Here, however, the statements Brodbeck alleges violate Local Rule 56.1 are in fact concise, ranging from a single sentence in Paragraphs 5 and 9 or two sentences in Paragraph 8, to the longest paragraph, Paragraph 6, which totals six sentences. See D. 75 ¶¶ 5, 6, 8, 9, 14, 15. On this record, the motion to strike these paragraphs is denied.

Turning to Brodbeck's arguments with respect to Correira and Dodd's affidavits, D. 75-1; D. 75 at 68-69, a party may move to strike part or all of an affidavit in support of, or in opposition to, a motion for summary judgment if the party's objection is that "the material cited to support or

dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Federal Rule of Civil Procedure 37(c)(1) which precludes evidence not properly produced in discovery, "applies with equal force to motions for summary judgment." Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001). That is, in connection with a summary judgment motion, a party may be precluded from relying on evidence where he fails to comply with discovery requirements under the Federal Rules and his failure to comply is not substantially justified or the failure to do so was not harmless. Fed. R. Civ. P. 37(c)(1); see Hip Saver Co., Inc. v. J.T. Posey Co., 497 F. Supp. 2d 96, 103 (D. Mass. 2007).

Here, Dodd is the Correction Program Officer at DOC who investigated Brodbeck's June 2010 complaint against another CO. D. 75 at 68-69. Dodd's affidavit establishes that that an investigation took place, that Dodd interviewed several individuals as part of the investigation and that Dodd concluded, following her investigation, that Brodbeck had made false allegations against the CO. See D. 75 ¶¶ 3, 4, 5, 6, 7, 8, 9. Dodd had sufficient personal knowledge of DOC's investigation to submit an affidavit as to such facts, i.e., what she investigated and the basis for her findings, id. at 68-9, and such evidence would be admissible at trial. Similarly, Correia is DOC's Human Resources Director and was assigned to testify on behalf of DOC as to the Department's knowledge of various topics as its Fed. R. Civ. P. 30(b)(6) witness. D. 75-1 ¶¶ 1-2; D. 79 3-4. Correira's affidavit was submitted as to the facts she had knowledge of or could ascertain from DOC personnel records, of which she was familiar. D. 75-1 ¶¶ 1-2. Accordingly, the motion to strike these affidavits is also denied.

In its opposition to Brodbeck's motion to strike, DOC filed its own cross-motion to strike, D. 79, in which DOC seeks to strike Paragraph 13 of Brodbeck's Response to Local 56.1 Statement, D. 76, on the grounds that Brodbeck did not include the evidence therein in her response

to DOC's interrogatories, D. 75 at 110-114 (Exh. 6).  In an earlier interrogatory, DOC had asked Brodbeck to identify all similarly situated male employees who were treated better than her in the terms and conditions of employment.  Id. at 111.  In Brodbeck's response, Brodbeck stated that she only knew of the persons listed in the complaint.  Id. (noting that "because the information [DOC] seek[s] is exclusively in [DOC's] possession, [Brodbeck] will supplement this Answer in accordance with the Rules").  DOC argues that Brodbeck failed to ever supplement this response.  D. 79 at 5.  It further argues that to permit Brodbeck to identify the eight comparators she lists in her response to its statement of facts, D. 76 ¶ 13, would be to "deny DOC the opportunity meaningfully to investigate each alleged comparator's case to determine if the circumstances of each such case were, in fact, similar to Brodbeck's," D. 79 at 5.  DOC further contends that it asked for supplemental discovery responses on at least three occasions.  Id.  Brodbeck counters that information as to the comparable male COs was "in the possession of" DOC, and therefore, DOC could not have been prejudiced by the allegedly delayed disclosure.  D. 80 at 1-2.

Motions to strike are generally "disfavored in practice, and not calculated readily to invoke the court's discretion."  Boreri v. Fiat, 763 F.2d 17, 23 (1st Cir. 1985).  DOC may have made a showing of prejudice here given Brodbeck's lack of response to the interrogatory and reliance upon comparators only in her opposition, see S.E.C. v. Durgarian, 477 F. Supp. 2d 342, 360 (D. Mass. 2007), but the Court declines to grant the motion to strike here given that the motion for summary judgment is resolved on multiple grounds.  Accordingly, the Court DENIES DOC's motion to strike as to the referenced portion of Brodbeck's response, D. 76.[1]

### B. Administrative Exhaustion

---

[1] The Court DENIES Brodbeck's motion, D. 81, to file unredacted copies of D. 75, 76 and 80 as the Court was able to rely upon the material matters in the previously filed redacted copies.  Having considered Brodbeck's motion to sanctions, D. 67, and the opposition to same, D. 69, the Court DENIES that motion.

Title VII requires "an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir.1996). Filing an administrative charge "gives notice to both the employer and the [MCAD or EEOC] of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation." Thornton v. UPS, Inc., 587 F.3d 27, 31 (1st Cir. 2009) (citing Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990)). Given this purpose, "[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC [or MCAD] and the investigation which can reasonably be expected to grow out of that charge." Lattimore, 99 F.3d at 464 (first alteration and omission in original) (internal quotation marks omitted) (quoting Powers, 915 F.2d at 38).

DOC argues that Brodbeck failed to exhaust her administrative remedies with respect to Brodbeck's disparate treatment claims other than her claim pertaining to the disparate discipline she received compared to the male CO. D. 74 at 9. In Brodbeck's 2012 MCAD complaint, Brodbeck alleged she was disciplined more harshly than the male CO, despite similar culpability. D. 76 at 61-62. Brodbeck also alleged that she was not promptly returned to her position after being found fit for duty following a January 2012 examination. Id. at 62. Under Title VII, a plaintiff must file an administrative charge with the MCAD or EEOC within 300 days of the occurrence of the alleged harassing or discriminatory events. 42 U.S.C. § 2000e–5(e)(1); Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 40 (1st Cir. 2011) (noting that "[b]oth the federal and state provisions require that a charge be filed within 300 days of the alleged unlawful employment practice"). Brodbeck filed her MCAD charge on April 5, 2012. D. 76 at 61. Thus, for the events underlying her claims to fall within the statute of limitations, they must have occurred on or after June 10, 2011.

Any alleged discriminatory acts that occurred after the violations raised in the MCAD complaint typically require a new charge be filed with MCAD within 300 days. Two doctrines, the reasonable relation doctrine and the scope of the investigation rule, "operate to convert otherwise untimely claims to claims properly filed for purposes of MCAD exhaustion." Davis v. Lucent Techs., Inc., 251 F.3d 227, 232-33 (1st Cir. 2001). The reasonable relation doctrine considers whether otherwise untimely claims "may be said to relate back to the original filing." Id. at 233. The scope of the investigation rule "reflects the idea 'that the scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the MCAD investigation could reasonably be expected to uncover.'" Id. (quoting Conroy v. Boston Edison Co., 758 F. Supp. 54, 58 (D. Mass. 1991)). Accordingly, the scope of the investigation rule "permits a district court to look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation." Thornton, 587 F.3d at 32. "Additional claims may proceed when they 1) allege the same type of discrimination and 2) are based on the same type of conduct as the administrative charge." Navarro v. U.S. Tsubaki, Inc., 577 F. Supp. 2d 487, 503 (D. Mass. 2008) (internal quotation marks omitted) (quoting Perch v. City of Quincy, 204 F. Supp. 2d 130, 133 (D. Mass. 2002)).

Here, Brodbeck alleged discriminatory acts in her MCAD complaint tied to DOC imposing allegedly disparate disciplinary action on Brodbeck and the male CO. D. 76 at 61-62. In the complaint, Brodbeck claims that her "disability was used to put [her] under the detached pay status through a fitness for duty evaluation" and that the male CO "received better treatment than [she] did despite [them] being involved in the same investigation." Id. at 62. She also claims that she "was discriminated against by the [DOC] due to [her] gender and disability by subjecting [her] to

disparate treatment, suspension, and not getting back to [her] about when [she] could return to work." Id.

Brodbeck failed to file charges with the MCAD or EEOC relating to any alleged continuing acts of discrimination that post-date her March 2012 suspension. Id. at 61-62. DOC argues that Brodbeck's allegations based on her October 5, 2012 fitness for duty evaluations and her subsequent involuntary retirement in August 2014, which were not included in the 2012 MCAD complaint, should be barred. Id. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are considered "separate actionable 'unlawful employment practice[s],'" and a party "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (holding that while the defendant "alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through . . . the date that he was fired, only incidents that took place within the timely filing period are actionable"). While Brodbeck references the reasonable relation doctrine and the scope of the investigation rule, she fails to explain how the October 2012 fitness for duty evaluation or her subsequent involuntary retirement present "acts of discrimination which the MCAD investigation could reasonably be expected to uncover," Davis, 251 F.3d at 233 (internal quotation marks and citations omitted), or how these events relate to or arise from the events described in her MCAD complaint—specifically, the disciplinary action she received in March 2012, see Thornton, 587 F.3d at 32 (holding that there was "no reason to believe that a reasonable investigation would have uncovered the various subsequent, discrete events, actions, and . . . restrictions" that the plaintiff cited in his district court complaint). Accordingly, to the extent Brodbeck includes claims regarding her October 2012 evaluation and involuntary retirement in 2014, these claims are barred for failure to exhaust.

DOC further argues that Brodbeck's claims regarding DOC's failure to promptly return Brodbeck to work once she was found fit for duty on January 2, 2012 should also be barred, as these claims were not made to the EEOC. D. 74 at 10. In her MCAD complaint, however, Brodbeck did allege that she "was discriminated against by the [DOC] due to [her] gender and disability by subjecting [her] to disparate treatment, suspension, and not getting back to [her] about when [she] could return to work." D. 76 at 62. While the EEOC's investigation into the discipline Brodbeck received may not have revealed whether the delay in returning Brodbeck to work on January 2, 2012 was gender-based, the EEOC's investigation into Brodbeck's claim that DOC failed to "get[ ] back to [her] about when [she] could return to work" and discriminated against her on the basis of due to "[her] gender and disability" could have. D. 76 at 62. Accordingly, because Brodbeck's MCAD complaint adequately put DOC on notice as to the general scope of this claim and because her gender discrimination allegation falls within the scope of the investigation of the administrative charge, the Court finds that Brodbeck has met exhaustion requirements as to the alleged delay in returning Brodbeck to work in January 2012.

C.  **Res Judicata**

A claim is precluded under *res judicata* if there is "(1) a final judgment on the merits in an earlier action; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the two suits." Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 177 (1st Cir. 1999). As a general rule, the affirmative defenses enumerated in Federal Rule of Civil Procedure 8(c), including *res judicata*, are "deemed waived unless raised in the answer." Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003) (citing Fed. R. Civ. P 8(c)). An exception to Rule 8's bar on untimely affirmative defenses may be invoked if, *inter alia*, "(i) the defendant asserts [res judicata] without undue delay and the plaintiff is not

10

unfairly prejudiced by any delay; or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed." Id. (internal citations omitted)

Here, Brodbeck argues that DOC failed to raise the *res judicata* defense in its answer, D. 14, and is now barred from doing so pursuant to Rule 8(c), D. 76-1 at 10. Brodbeck first filed her complaint on May 1, 2018. D. 1. DOC filed its answer to the complaint two months later on July 3, 2018, D. 14, at which point, there had been no final judgment on the merits in the state case DOC now relies upon, D. 75 at 144-55. The Superior Court decision was issued on March 21, 2019, id. at 144, nearly nine months after DOC filed its answer. Thus, "the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed." Davignon, 322 F.3d at 15; see, e.g., Bos. Sci. Corp. v. Schneider (Europe) AG, 983 F. Supp. 245, 254 (D. Mass. 1997), dismissed sub nom. Bos. Sci. Corp. v. Schneider (USA) Inc., 152 F.3d 947 (Fed. Cir. 1998) (allowing defendant's *res judicata* defense to proceed where the precluding event did not occur until after the answer was filed). Accordingly, the affirmative defense of *res judicata* is not barred pursuant to Federal Rule of Civil Procedure 8(c).

Turning to the elements of *res judicata*, Brodbeck filed suit against the same party, DOC, in Brodbeck v. Massachusetts Dept. of Correction, No. 1884-cv-01866, 2019 WL 3883159, at *1 (Mass. Super. Mar. 21, 2019). The Superior Court entered a final judgment on the merits by allowing DOC's motion to dismiss. See Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010) (citing AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005)) (holding that dismissal for failure to state a claim is "a final judgment on the merits").[2] The Superior Court's decision was later affirmed in Brodbeck v. Dep't of Correction, 97 Mass. App. Ct. 1122, review

---

[2] It does not matter that Brodbeck brought those claims here first and then dismissed them as the state court was the first to enter final judgment on the merits which has preclusive effect. See Girogosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008).

11

denied, 486 Mass. 1101 (2020). Although she asserts a gender discrimination claim here and the claims before the state court were for disability discrimination and retaliation, Brodbeck's claims relate to the same events as those included in her current suit—the disparate treatment she received in March 2012 and her delayed return to work following the January 2012 evaluation. See Brodbeck, 2019 WL 3883159, at *1. The test for preclusive effect is not whether she brought the same claims, but whether she could have done so. Gloucester Marine v. Charles Parisi, Inc., 36 Mass. App. Ct. 386, 391 (1994); see Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st Cir. 2005) (noting that "*[r]es judicata* promotes judicial efficiency and prevents 'claim splitting'"). No unfairness results from this conclusion where Brodbeck voluntarily chose to split her claims and proceed in both forums. Giragosian, 547 F.3d at 65. For these reasons, Brodbeck's remaining claim here is barred by *res judicata*.

### D.    **Gender Discrimination**

Even if Brodbeck's Title VII claim was not barred by *res judicata*, it fails on the merits.

####    1.    *One-Day Suspension Following Investigation*

Brodbeck asserts claims of gender discrimination in violation of Title VII against DOC. D. 1 at 11. Absent direct evidence of discrimination, courts apply the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to disparate treatment claims under Title VII. Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996); Yee v. Mass. State Police, 481 Mass. 290, 294 (2019). Under the McDonnell Douglas framework, a *prima facie* case for discrimination for disparate treatment involves: "(1) the plaintiff must be a member of a protected class; (2) she must be qualified for her job; (3) she must suffer an adverse employment action at the hands of her employer; and (4) there must be some evidence of a causal connection between her membership in a protected class and the adverse employment action." Bhatti v. Trs.

of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011). This *prima facie* burden is not an onerous one to satisfy. Caraballo-Caraballo v. Correctional Adm., 892 F.3d 53, 57 (1st Cir. 2018))).

Here, Brodbeck has alleged that DOC "discriminated against [Brodbeck] in violation of [Title VII] by treating her differently than similarly situate[ed] male employees because she is female." D. 1 ¶ 74. First, Brodbeck alleges a male CO, who allegedly stalked and harassed Brodbeck, received disparate disciplinary action than what Brodbeck received. D. 1 ¶ 47. In an employment discrimination case premised on disparate treatment, "it is essential for the plaintiff to show that the employer took a materially adverse employment action against [her]." Blackie v. State of Me., 75 F.3d 716, 725 (1st Cir. 1996) (noting that "the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action"). "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." Id. (internal citation omitted). Here, Brodbeck was suspended for one day "with pay pending investigation." D. 76 ¶ 5. Indefinite suspensions, as well as month-long suspensions, are considered materially adverse employment actions. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 73 (2006) (considering such factors as the family not knowing whether or when defendant could return to work and the hardship of a month without pay when assessing whether employment action was materially adverse).

A one-day suspension is not deemed a materially adverse employment action. See, e.g., Virostek v. Liberty Twp. Police Dep't/Trustees, 14 F. App'x 493, 505 (6th Cir. 2001) (holding that a one-day suspension without pay that was never served is not an adverse employment action);

Dobrynio v. Cent. Hudson Gas & Elec. Corp., 419 F. Supp. 2d 557, 564 (S.D.N.Y. 2006) (holding that "being suspended for a single day, with no long term consequences whatever, is not an actionable adverse employment action because it is not material" (emphasis omitted)).  Brodbeck never served her one-day suspension, which was later removed, D. 75 ¶ 7; D. 76 ¶ 5, but had Brodbeck served the one-day suspension, she would have still continued in the same position, at the same pay, with the same responsibilities.  Accordingly, Brodbeck cannot meet the third prong of the McDonnell Douglas framework.

      Even if, however, Brodbeck met the requirements of the McDonnell Douglas framework's third prong, she additionally fails to present evidence or assert facts demonstrating that the difference in disciplinary action between herself and the male CO was gender-based.  The male CO received a one-day suspension for failing to report court appearances, in violation of DOC regulations.  D. 75-1 at 4-5.  As evidenced by the Dodd affidavit, D. 75 at 68-69, made by the Correction Program Officer who investigated Brodbeck's complaint, Brodbeck received a one-day suspension for making allegedly false claims that the male CO threatened her in court and needed to be restrained, id. at 69.  Brodbeck asserts that while she was "detached with pay pending investigation," the male CO was not, D. 76 ¶ 5; D. 76 at 61-62, but she presents no evidence, direct or indirect, that this disparate treatment was due to her gender rather than her and the CO having committed different DOC violations. Given that the dissimilar discipline is for dissimilar wrongdoing, without more, Brodbeck cannot meet the fourth prong of the McDonnell Douglas framework.  Accordingly, DOC's motion for summary judgment is granted with respect to this claim.

### 2. *Delayed Return Following January 2012 Fitness for Duty Assessment*

Second, Brodbeck asserts she was not returned to work following her January 2012 fitness for duty evaluation with the same timeliness other male COs were returned to work in similar circumstances. Brodbeck alleges DOC did not permit her to return to work in January 2012, despite her having had an examiner declare her fit to return to work at that time. D. 1 ¶¶ 52-56. She points to evidence that shows that other male COs were promptly returned to work after having been cleared as a result of fitness for duty evaluations or after having failed fitness for duty evaluations and received treatment. D. 76 at 86-253 (Exh. 18-26). Brodbeck was deemed fit for duty in January 2012 but was not permitted to return to work until the summer 2012. D. 1 ¶ 60. Even assuming *arguendo* that Brodbeck satisfied here prima facie showing as to this claim, the burden shifts to the DOC to show a "legitimate, non-discriminatory reason" for its adverse employment action. Krause v. UPS Supply Chain Solutions, Inc., No. 08-cv-10237, 2009 WL 3578601, at *8 (D. Mass. Oct. 28, 2009) and cases cited. Under Title VII, if the employer does so, then the employee (Brodbeck) must show that the proffered reason was not only pretext, but that the "true reason for the [action] was intentional discrimination." Id. DOC has sustained its burden of production that the reason for the delay of Brodbeck's return to work was her request for future accommodations and the need to resolve same. At a January 30, 2012 meeting, after Brodbeck had been deemed fit for duty by an independent medical examiner, Brodbeck met with DOC to express her issues with her current accommodations, including issues with "entry control points at the housing units at the facility," as noted in her testimony. D. 75 at 42. DOC asserts that in response to Brodbeck's request, it requested a doctor's note from Brodbeck confirming that she could return to work, as well as medical support for the additional accommodations, as evidenced in its May 2012 letter to Brodbeck from the Assistant Deputy Commissioner. D. 75-1

15

at 7 (listing accommodations Brodbeck requested at the January 30, 2012 meeting and noting that Brodbeck had failed to submit the requested medical documentation). DOC contends that Brodbeck's failure to provide medical documentation resulted in her delay returning to work. D. 74 at 17-18. Brodbeck has failed to show that this reason is pretext and that the true reason is discrimination based on gender. Although Brodbeck introduces some documents demonstrating that other male COs have been returned to work more quickly than in Brodbeck's case, see D. 76 at 86-253 (Exhs. 18-26), she fails to show how these individuals are similarly situated, Caesar v. Shinseki, 887 F. Supp. 2d 289, 298 (D. Mass. 2012) (recognizing that "[a] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in material respects"), including a failure to provide medical documentation for additional accommodations. See e.g., D. 76 at 11-13. Accordingly, the motion for summary judgment is allowed with respect to Brodbeck's gender discrimination claim.

### 3. Retaliation Claims

Brodbeck cites to a retaliation claim in her opposition motion, in which she alleges DOC retaliated against her for filing a complaint with MCAD, D. 76-1 at 13, but she has not asserted a retaliation claim under Title VII in this case. To state a retaliation claim under the statute, "a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." Noviello v. City of Bos., 398 F.3d 76, 88 (1st Cir. 2005).

Although there is no dispute that Brodbeck engaged in protected activity by filing a complaint with MCAD, Mullenix v. Forsyth Dental Infirmary for Children, 965 F. Supp. 120, 149 (D. Mass. 1996), and even assuming *arguendo* that the delay in permitting Brodbeck to return to work was an adverse employment action, Brodbeck has not presented a Title VII retaliation claim

before this Court. Even before Brodbeck voluntarily dismissed five of her six claims here, her original claims did not include a retaliation claim under Title VII even as she asserted same under the ADA, Count II, and under Mass. Gen. L. c. 151B. D. 1 at 10-11; see D. 10 (voluntarily dismissing all claims except Count III, the Title VII claim for gender discrimination). The sole claim before this Court is Count III, Brodbeck's claim for gender discrimination in violation of Title VII. Although Title VII includes a retaliation provision, Brodbeck did not assert retaliation in her complaint other than in the claims removed to the Superior Court. D. 1; D. 10. In those removed claims, Brodbeck asserted that DOC unlawfully retaliated against her, in violation of 42 U.S.C. § 12203 and Mass. Gen. L. c. 151B § 4, for exercising her rights and engaging in protected conduct under the cited statutes. D. 1 ¶¶ 71-72, 79-80. Accordingly, as Brodbeck did not assert such retaliation claim under Title VII, she cannot survive summary judgment on a claim that she never previously asserted. See Carrozza v. CVS Pharmacy, Inc., 992 F.3d 44, 59 (1st Cir. 2021) (noting that "a litigant may not posit a theory for the first time in opposition to a summary judgment motion").

## VI.  Conclusion

For the foregoing reasons, the Court ALLOWS DOC's motion for summary judgment, D. 73, and DENIES Brodbeck's and DOC's motions to strike, D. 78; D. 79.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge